# RECORD IMPOUNDED

---

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

---

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4992-18T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

J.S.,

      Defendant,

and

A.R.F., JR.,[1]

      Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF S.L.-S.F.,

      a Minor.

_____

Submitted July 28, 2020 – Decided August 5, 2020

---

[1] We refer to the parties by fictitious names and initials to protect their privacy. R. 1:38-3(d)(12).

Before Judges Sumners and Mayer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FG-12-0052-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Anna F. Patras, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Mary L. Harpster, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Noel Christian Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant A.R.F., Jr., is the biological father of S.L.-S.F. (Sara), born in 2008. Defendant appeals from the June 28, 2019 judgment of guardianship terminating his parental rights to Sara.[2] Defendant contends that the Division of Child Protection and Permanency (Division) failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. Taking the same

---

[2] The judgment also terminated the parental rights of the child's biological mother, J.S., who voluntarily surrendered her rights. J.S. has not appealed the trial court's decision terminating her parental rights.

A-4992-18T4

position advanced before the trial court, the Law Guardian supports the termination on appeal.

Based on our review of the record and applicable law, we are satisfied that the evidence strongly supports the decision to terminate defendant's parental rights. Accordingly, we affirm substantially for the reasons expressed in the thorough and thoughtful oral decision rendered by Judge Melvin L. Gelade on June 27, 2019.

We will not recite in detail the history of the Division's interactions with defendant and Sara. Instead, we incorporate by reference the factual findings, credibility determinations, and legal conclusions contained in Judge Gelade's decision. We add the following comments.

At the guardianship trial, the Division offered the testimony of a caseworker, Amy Cottrell, as well as testimony from Dr. Karen D. Wells, an expert in psychology, focusing on parental fitness and bonding. Sara also testified in camera. Defendant presented expert testimony from Dr. Gerard Figurelli, an expert in psychology and addiction. Judge Gelade found Sara and the Division's witnesses to be truthful and credible. He also found Dr. Figurelli to be "a sincere and credible witness" and "accept[ed] his factual testimony as true," particularly concerning defendant's limitations to assume the obligations

A-4992-18T4

of a parent upon his release from incarceration and the inability to predict whether defendant will relapse into drug use upon his release.

Dr. Wells supported the Division's plan for termination of defendant's parental rights. She conducted a psychological evaluation of defendant as well as a bonding evaluation between defendant and Sara. Defendant admitted to Dr. Wells that he used narcotics for about half of his life and attended several substance abuse programs. Based on her interview with defendant and her review of relevant documents, Dr. Wells diagnosed defendant with, among other things, "[o]pioid [u]se [d]isorder in early remission in a controlled environment." Dr. Wells expressed concern that defendant's opioid use might recur when he is released from prison.[3] According to Dr. Wells, due to his incarceration, defendant had no present ability to parent Sara. She further opined that defendant may not fully comprehend the impact of his drug use on Sara, as he continued using drugs even though he knew his daughter was aware of his drug use.

---

[3] Defendant was incarcerated on June 13, 2018 on charges of resisting arrest and aggravated assault. His anticipated release date is 2023.

A-4992-18T4

Dr. Wells also conducted an interview with Sara as part of her bonding evaluation with the resource parents.[4]  Sara had been with the same resource parents as a result of earlier Division proceedings involving her biological parents.  The resource parents expressed their intent to adopt Sara if her biological parents were unable to regain custody.

Sara told Dr. Wells her parents were involved with drugs and, while she loved them, she did not feel safe with them.  She explained she felt safe and content in the care of her resource parents.  During Dr. Wells' bonding evaluation with the resource parents, she observed a "secure and intact" bond between Sara and her resource parents.  While Sara knew her biological parents and continued speaking with both parents, Dr. Wells determined "[t]he psychological parenting bond is with the resource parents . . . primarily as a result of their trustworthiness, their reliability, and the continuity of care that they have given."

In evaluating the bond between Sara and defendant, Dr. Wells noted a strong relationship between the two.  Dr. Wells testified defendant is "kind, and considerate, and loving towards [Sara]," and that Sara loves her father.  Despite their intact bond, Dr. Wells explained Sara did not trust that defendant would

---

[4]  The resource parents are Sara's maternal uncle and aunt.

A-4992-18T4

prioritize her needs and avoid exposing her to harmful situations attendant to his drug use. Dr. Wells concluded Sara would suffer some harm if the bond between her and defendant was severed, but such harm would not be severe or enduring. Because defendant had been periodically absent from his daughter's life, Dr. Wells concluded Sara had grown accustomed to his absence and accepted that she may be unable to have a sustained relationship with her father. In addition, Dr. Wells reported Sara recognized defendant would not be available to care for her on a day-to-day basis because he was incarcerated. Dr. Wells noted that Sara loves her biological parents and wants to continue a relationship with them. Dr. Wells concluded the harm to Sara from severance of the bond with her father was mitigated by the resource parents, who had previously cared for Sara during periods of defendant's absence or incarceration. The resource parents also told Dr. Wells they would allow defendant to remain in contact with Sara. Based on her evaluations, Dr. Wells determined permanency for Sara "could only occur for her if she was adopted and [defendant's] rights were terminated."

A Division case worker, Amy Cottrell, also testified at trial. Based on her monthly observations of Sara and her resource parents, Cottrell reported Sara and her resource parents had a "very natural and easy" relationship. She testified Sara felt "at home" and comfortable with the resource parents and was doing

well in school. Cottrell testified the Division's plan was for the resource parents to adopt Sara because the resource parents and Sara favored that option as a permanent plan. Based on conversations with the resource parents, Cottrell believed Sara would be allowed continued contact with her father because the resource parents "wanted to make [Sara] happy and what would make her happy is continued contact with her parents and they knew that."

The Division's final witness was Sara, who testified in camera in the judge's chambers while defendant listened in the courtroom. Sara explained she liked living with her aunt and uncle because it was safe, and her resource parents paid more attention to her than did her biological parents. Sara also testified she understood the concept of adoption and wanted to be adopted by her aunt and uncle because no one used drugs at their home. While she lived with her biological parents, Sara explained she often saw them using drugs and "nod[ding] out" around the house. Sara also told the judge about a specific incident in April 2017 when her parents were arrested for drugs during a motor vehicle stop while Sara was in the car.

Sara testified she loves her father and would help him in any way she could but did not want to live with him because she feared his drug use would render the home unsafe. Sara believes she will be allowed to communicate with

A-4992-18T4

her father if she is adopted by the resource parents. However, Sara recognized her aunt and uncle may restrict contact with her father upon adoption and, although that possibility makes her feel sad, she would be "fine with that."

During the trial, defendant called only one witness, Dr. Figurelli, who conducted a clinical interview with defendant and a bonding evaluation between defendant and Sara. During his interview with defendant, Dr. Figurelli concluded defendant would need intensive substance abuse treatment upon his release from prison "in order to be able to parent at some point in a safe and stable manner." Based on the pending charges against defendant, Dr. Figurelli explained he could not determine whether and when defendant would be able to parent Sara.

During his bonding evaluation, Dr. Figurelli found "multiple elements of a significant emotionally attached relationship" between defendant and Sara. Dr. Figurelli opined that severing the relationship between defendant and Sara would result in severe and enduring harm to the child. While he did not evaluate the bond between Sara and her resource parents, Dr. Figurelli opined that even if the bond was strong, it was not certain the harm from severing the parental relationship between Sara and defendant would be mitigated. According to Dr. Figurelli, the optimal situation for Sara's permanency would be placement in a

A-4992-18T4

stable and safe environment, "perhaps like the one she's currently in, but to be able to maintain a relationship with her biological father."

On cross-examination, Dr. Figurelli conceded certain attempts by defendant to complete substance abuse treatment had been unsuccessful, and defendant "had not been able . . . to sustain his recovery over a long period of time, or a sustained period of time." He also explained the relationship between defendant and Sara, while containing indicators of a close relationship, exhibited some emotional conflicts. One such conflict was defendant's drug use, which Sara observed on numerous occasions. Dr. Figurelli agreed that seeing her father overdose likely frightened and saddened Sara. Based on information provided as part of the evaluation, Dr. Figurelli opined Sara reasonably feared for her life during the April 2017 incident in which the police, with guns drawn, arrested her parents while Sara was in the rear seat of the car. In his report, Dr. Figurelli noted Sara wanted to live with her aunt and uncle and he "put a lot of stock" in that stated preference because Sara felt safe with them.

Judge Gelade considered the testimony and documentary evidence presented at trial and found the Division proved all four prongs of the best interests test by clear and convincing evidence in accordance with N.J.S.A. 30:4C-15.1(a). Based on substantial and credible evidence adduced during the

trial, he determined termination of defendant's parental rights was in Sara's best interests.

Our review of the trial judge's decision is limited. We defer to his expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by his factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).

Judge Gelade found the Division met its burden of proving harm to Sara's health, safety, and development because seeing defendant's drug use was harmful and upsetting, particularly seeing her parents arrested for purchasing drugs. The judge also concluded the Division proved defendant failed to take steps to cease harming Sara as a result of his continuing drug addiction and criminal behavior. Judge Gelade further found the Division made reasonable efforts to provide services to facilitate reunification but that defendant's own actions rendered those efforts unsuccessful. After evaluating the expert testimony, the judge also concluded that the harm inherent in severing the legal parental relationship between Sara and defendant was outweighed by the benefit

of Sara being adopted by her resource parents, who would continue to care for her in a safe and nurturing manner.

On appeal, defendant argues the judge erred in determining kinship legal guardianship (KLG) was not a viable alternative to adoption. KLG is not available when adoption is feasible and likely. N.J. Div. of Youth & Family Servs. v. S.V., 362 N.J. Super. 76, 88 (App. Div. 2003). See also N.J. Div. of Child Prot. & Permanency v. M.M., 459 N.J. Super. 246, 261-62 (App. Div. 2019) (requiring findings by the trial court addressing KLG as it relates to the feasibility of adoption and the unequivocal consent of the resource parents to adoption).

Here, around the time the Division filed the complaint for guardianship, a case worker went to the resource parents' home and explained the difference between KLG and adoption. The case worker gave the resource parents information and paperwork regarding KLG. After reading the KLG documents and discussing the matter with the Division's case worker, the resource parents stated they were "committed to adoption."

In October 2018, a different Division case worker visited the resource home and asked the resource parents again about KLG versus adoption. On that occasion, the resource parents confirmed they "definitely prefer adoption." In

addition, the resource parents told the Division's expert they sought to adopt Sara because adoption provides more permanency and stability than KLG.

In reviewing the record, we are satisfied Judge Gelade correctly deemed KLG was not a viable alternative in this case. Here, the resource parents understood the difference between KLG and adoption and expressed their unequivocal desire to adopt Sara.

Applying the legal principles governing our review of a decision to terminate parental rights, we conclude Judge Gelade's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12